## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JAMEIKA ANTINETTE BRASHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **4:20-cv-00673-LSC** |
| **v.** | ) | |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

The plaintiff, Jameika Antinette Brasher ("Brasher" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Brasher timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Brasher was 32 years old at the time of her SSI application, and she attended school through the twelfth grade. (Tr. at 60.) Her past work includes experience as

a nurse assistant, automotive parts sorter, and cashier at fast food restaurants and a grocery store. (Tr. at 24-25, 204-11.) Plaintiff claims that she became disabled on November 16, 2017, as a result of a heart attack. (Tr. 191).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id*.

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id*. §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing his past relevant work, the evaluator will make a finding of not disabled. *Id*.

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id*.; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found that Plaintiff has not engaged in SGA since November 16, 2017, the alleged date of the onset of her disability. (Tr. 74.) According to the ALJ, Plaintiff's coronary artery disease status post myocardial infarction with coronary artery bypass graft x3, thyrotoxicosis (hyperthyroidism) with Graves' diseases status post thyroidectomy, major depressive disorder, and anxiety disorder are "severe impairments." (*Id*.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 75.) Furthermore, Plaintiff's alleged hypertension and hyperlipidemia did not impose substantial limitations on the Plaintiff because they are well-controlled with medication and are asymptomatic. (*Id*.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform light work as defined in 20 CFR404.1567(b) and 416.967(b) except the claimant can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders or scaffolds; the claimant can frequently be exposed to high, exposed places or moving, mechanical parts, extreme heat, extreme cold, and

humidity; the claimant can understand, remember, and carry out simple instructions and make simple work-related decisions; the claimant can tolerate frequent changes in routine work setting; the claimant can tolerate frequent interaction with coworkers, supervisors, and with the public.

(Tr. at 76-77.)

According to the ALJ, Plaintiff is unable to perform any of her past relevant work. (Tr. at 79.) The ALJ also determined that Plaintiff is a "younger individual age 18-49" at 32 years old, has at least a high school education, and is able to speak English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 80.) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocational Rules as a guideline for finding that there are jobs in the national economy with a significant number of positions that Plaintiff is capable of performing, such as a housekeeper, electrical assembler, and inspector/packager. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from November 16, 2017, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates

against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520. 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III.    Discussion

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the Appeals Council erroneously denied review by holding that the new evidence that Plaintiff submitted did not show a reasonable probability that it would change the outcome of the decision, and (2) the ALJ did not accord the proper weight to the opinion of Dr. Darryl Prime, as Plaintiff's treating heart physician, and failed to show good cause for not doing so.

### A. Appeals Council Review

With few exceptions, a claimant may present new evidence at each stage of the administrative process, including to the Appeals Council. *See* 20 C.F.R. §§ 404.900(b), 416.1400(b). The Appeals Council has discretion to deny review of the ALJ's decision. *See* 20 C.F.R. §§ 404.967, 416.1467. The version of 20 C.F.R. § 404.970 that applies to this case states that the Appeals Council will consider additional evidence if Plaintiff had good cause for not informing the Commissioner about or submitting the evidence as described in 20 C.F.R. § 404.935 and there is "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a); *see also* 81 FR 90987 (explaining the new rules are effective January 17, 2017).

Further, the Commissioner's internal policy provides guidance on the meaning of "material" and chronological relevance and what it means for the Appeals Council to determine there is not a reasonable probability that the additional evidence would change the outcome of the decision. Hearings, Appeals, and Litigation Law Manual (HALLEX), § I-3-3-6, 1993 WL 643129 (May 1, 2017). The HALLEX explains that additional evidence is "material" if it is "relevant, i.e., involves or is directly related to issues adjudicated by the ALJ." *Id*. It explains that

additional evidence "relates to the period on or before the date of the hearing decision" (i.e., is chronologically relevant) "if the evidence is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision." *Id.* The HALLEX also explains that the Appeals Council "will evaluate the entire record along with the additional evidence to determine whether there is a reasonable probability that the additional evidence will change the outcome of the decision." *Id.*

The ALJ issued his decision on April 4, 2019. (Tr. at 81.) Brasher subsequently submitted three new pieces of evidence to the Appeals Council: (1) a statement from Dr. Olajide Akinsanya dated July 9, 2019; (2) records from Cardiothoracic Surgical Associates dated December 13, 2017; and (3) records from Akins Medical Clinic from March 8, 2019, to May 3, 2019. (Tr. at 2, 7, 13-19, 43-44.) The Appeals Council denied Brasher's request for review despite this newly submitted medical evidence, based on a determination that the new evidence did not show "a reasonable probability that it would change the outcome of the decision." (Tr. at 1-3.)

Plaintiff challenges this determination, claiming that the Appeals Council applied the wrong standard of review in considering whether the new evidence would change the outcome. (Doc. 10 at 32.) Plaintiff asserts that the proper standard is whether there is a reasonable *possibility* that the new evidence would change the

9

result, rather than a reasonable *probability* of a different outcome due to the new evidence. (*Id.*) Plaintiff cites *Hyde v. Bowen*, concluding that "evidence is 'material' in that there is a reasonable possibility that the new evidence would change the administrative outcome." 823 F.2d 456, 459 (11th Cir. 1987).

The new rules, which came into effect in 2017 and govern in this case, dictate that the Appeals Council will review a case when it "receives additional evidence…, and there is a reasonable *probability* that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5), 416.1470(a)(5) (emphasis added); *see also Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90,987-01 (Dec. 16. 2016). In addition, the Eleventh Circuit has on at least one occasion used the terms "possibility" and "probability" interchangeably when articulating the standard, suggesting that the difference between the meaning of the two terms in this context is not so great to produce a different result. *See Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1321-22 (11th Cir. 2015). Moreover, *Washington* was decided two years before the Social Security Administration revised the regulations, clarifying that the proper consideration for the Appeals Council is whether there is a reasonable probability that the additional evidence would change the outcome of the decision.

Along with this challenge, Plaintiff suggests that the Appeals Council erred by failing to provide a more detailed analysis for its denial of review. However, Eleventh Circuit precedent demonstrates that the Appeals Council was not required to provide a more detailed explanation of its reason for denying review. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014); *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018). Accordingly, the Appeals Council properly concluded that the new evidence did not establish a reasonable probability of a different outcome. (Tr. at 2.)

The additional evidence consists of five records. First, on December 13, 2017, the plaintiff presented to Cardiothoracic Surgical Associates for a follow-up after her coronary artery bypass graft surgery on November 19, 2017. (Tr. at 44.) The evaluating physician, Dr. George Robinson, recorded mostly normal findings, aside from Plaintiff appearing nervous. (Tr. at 43-44.) At this appointment, which was less than one month after her surgery, Plaintiff stated she felt like she had been run over by a truck and complained of shortness of breath when walking, blackouts, dizziness and weakness, and frequent nausea and vomiting. (*Id.*) The record also indicates that Plaintiff was "very nervous, very jittery, and highly anxious." (*Id.*) Still, she showed regular heart tones, a peripheral pulse that was palpable at all four extremities, and intact incisions with no redness or edema. (*Id.*) Dr. Robinson also noted that Plaintiff

had an abnormal thyroid panel and that it was concerning that the Plaintiff was in a hyperthyroid state. (*Id.* at 44.) The doctor did say, however, that Plaintiff "d[id] not need to see us back unless other issues arise," even though she had not filled prescriptions for medications prescribed to her. (*Id.*)

The next three records were Progress Notes that all came from Akins Medical Clinic. The first visit occurred on March 8, 2019, when Dr. Olajide M. Akinsanya cleared the patient to fly to Los Angeles. (Tr. at 17-19.) The examination revealed largely unremarkable findings, including no heart murmurs, a regular heart rate, a normal abdomen with bowel sounds present, and motor strength normal for upper and lower extremities. (*Id.* at 17.) The Plaintiff, however, did receive treatment for essential (primary) hypertension, atherosclerotic heart disease of native coronary artery without angina pectoris, anxiety disorder, arthropothy, thyrotoxicosis, pure hypercholesterolemia, constipation, and anemia, in the form of medication. (*Id.* at 17-18.) She was also assessed with functional dyspepsia. (*Id.* at 17.)

Her next progress note from Akins Medical Clinic was for April 3, 2019. (Tr. at 15-16.) The general examination revealed that the Plaintiff was in much the same condition as on the date of her March exam. (*See id.* at 15, 17.) In addition to the anxiety disorder, arthropathy, thyrotoxicosis, and anemia, she was also treated for

abnormal uterine and vaginal bleeding and cellulitis and abscess of the mouth. (*Id.* at 15-16.)

The final progress note from Akins Medical Clinic was entered by Dr. Akinsanya on May 3, 2019. (Tr. at 13-14.) Again, the examination revealed that the Patient was in much the same condition as at her prior visits. (*Id.* at 13.) The only new condition that appeared on her assessment was Melena, and she was referred to Dr. Cesar Fernandez for an evaluation. (*Id.* at 13-14.)

A physical capacities evaluation form completed by Dr. Akinsanya was the final additional record submitted to the Appeals Council. (Tr. at 7.) Dr. Akinsanya indicated on the form that Plaintiff could sit upright for less than thirty minutes and stand for less than fifteen minutes, would by lying down, sleeping, or propping her legs up for three hours of an eight-hour period, and be off task eighty percent of the day. (*Id.*) The doctor also expected Plaintiff to miss ten days of work due to her conditions in a thirty-day period. (*Id.*) Dr. Akinsanya noted that the limitations existed back to the date of November 18, 2017, and he expected the Plaintiff's condition to last for twelve months or more. (*Id.*) Coronary artery disease, myocardial infarction, hyperthyroidism, anemia, arthropathy, anxiety, and depression were listed as the conditions causing the limitations. (*Id.*) The doctor also

listed dizziness, hypertension, and fatigue among the side effects caused by Plaintiff's medications. (*Id.*)

This evidence, when considered with the whole record, does not create a reasonable probability that the ALJ would change his decision. The record examined by the ALJ demonstrated "a history of normal musculoskeletal and neurological findings, including normal sensation, normal motor function, normal muscle strength, normal balance, normal gait and stance, normal deep tendon reflexes, and no focal neurological deficits," after Plaintiff's bypass surgery. (Tr. at 78, 403-10, 733-50, 782-83, 797-96.) The record before the ALJ also indicated that Plaintiff was diagnosed with thyrotoxicosis after her bypass surgery. (Tr. at 371-77, 385-400, 468-69.) On July 25, 2018, Dr. Alberto Echeverri performed a complete thyroidectomy on Plaintiff. (Tr. at 430-46, 456-61.) However, the record also revealed that Plaintiff regularly received normal physical examination findings in most, if not all, categories. (*See e.g.,* Tr. at 303, 305, 308-09, 311, 314, 324, 328-29, 348, 350-51, 358-59, 366, 371, 373, 376, 378, 387-88, 392-93, 397-98, 405-06, 408-10, 469-70, 473, 476-77, 544, 564-65, 610-11, 614, 618, 621-22, 624, 628-29, 640, 662-63, 675, 679, 691, 699, 705, 715-16, 722-23, 733, 736, 738, 740, 742, 745, 747, 749, 759-60, 774-75, 777, 781-82, 794-95). Even though Plaintiff alleges that her disability is due to her heart attack, the records of physical examinations at Akins Medical Clinic after her bypass

surgery are consistent with the largely normal findings found throughout Plaintiff's medical records. (Tr. at 371-80, 733-50.) Specifically, the general examination at each of those appointments showed that Plaintiff was "in no acute distress, well developed, well nourished," with "full range of motion" in her neck, "no clubbing, cyanosis, or edema" in her extremities, and normal motor strength in the upper and lower extremities. (*Id.*) Plaintiff also received normal neurological findings, lacking any focal neurological deficit. (*Id.*)

Dr. Darryl Prime, the treating cardiologist whose opinion Plaintiff argues should have been given more weight, completed a physical capacities form for the plaintiff on February 28, 2019, similar to the one completed by Dr. Akinsanya on July 9, 2019. (Tr. at 754, 7.) Dr. Prime's form reflects a finding that Plaintiff would be lying down, sleeping, or propping her legs up for seven hours out of an eight-hour period. (Tr. at 754.) Dr. Akinsanya's assessment was that Platiniff would only be in that position for three hours out of eight. (Tr. at 7.) Dr. Prime also believed that Plaintiff would miss twenty days out of a thirty-day period, as compared with Dr. Akinsanya's assessment that she would miss ten days. (Tr. at 754, 7.) The doctors were in more agreement about the percentage of a normal workday that Plaintiff would be off task, with Dr. Akinsanya's opinion at eighty percent and Dr. Prime's at seventy percent. (*Id.*) While Dr. Prime indicated that Plaintiff's limitations did not

exist back to her alleged onset date of November 16, 2017, Dr. Akinsanya indicated that the limitations did exist back to November 18, 2017. (*Id.*) Dr. Prime attributed the limitations to Plaintiff's thyrotoxicosis and coronary artery disease and listed no side effects of her medications. (Tr. at 754.) Dr. Akinsanya added myocardial infarction, anemia, arthropathy, anxiety, and depression as causes of Plaintiff's limitations, as well as dizziness, hypertension, and fatigue among the side effects of the medication. (Tr. at 7.) The similarities between the assessment of these two doctors, especially some of the ways in which Dr. Prime found even more severe limitations, suggest that this new piece of evidence would not create a reasonable probability of a different conclusion from the ALJ's opinion.

The plaintiff's mental health findings were also normal, aside from one occasion. On January 12, 2018, Plaintiff was hospitalized after a fight with her boyfriend while drinking and taking more of her Xanax than prescribed. (Tr. at 542-44, 601.) Plaintiff threatened her sister, who called 911 after becoming frightened. (Tr. at 542-44, 548, 601.) Plaintiff also told the ambulance worker that she "wanted to go to sleep forever," and she had to be restrained for safe transport after attempting to strike EMS workers. (Tr. at 542-44, 548, 601, 604.) She told the therapist that she was angry that her sister had called 911 and was joking. (Tr. at 542-44, 601, 604.) Plaintiff was discharged the same day after a representative for

Calhoun Etowah Dekalb Mental Health ("CED Mental Health") reported that she believed that Plaintiff was not suicidal and safe to go home with family. (Tr. at 548.) Plaintiff was referred to CED Mental Health for a follow-up outpatient appointment the following week. (*Id.*) At the time of discharge, she was no longer agitated and was cooperating with staff. (Tr. at 544.)

In her appointments with CED Mental Health that followed, Plaintiff expressed concerns over her housing situation and physical health issues, but gardening and her children provided a source of joy. (Tr. at 589-93.) At each of these appointments, she was oriented to person, place, time, and situation and exhibited a normal appearance. (*Id.*). Her affect was normal during three of the four appointments, and while her mood was dysphoric at times, it was more often euthymic. (*Id.*) Moreover, the record showed consistently normal results regarding her psychiatric health during physical exams, including normal mood, affect, insight, judgment, behavior, and thought content. (Tr. at 303, 305, 311, 314, 328, 351, 359, 366, 388, 393, 398, 565, 629, 640, 663, 675, 679, 691, 699, 705, 716, 723, 760, 795.) She was also often found to have cooperative behavior. (Tr. at 351, 359, 366, 760, 795).

It is unlikely that the findings in the newly submitted records would change the ALJ's decision, especially considering the information that was already

considered in the record before him. Additionally, Plaintiff failed to provide an explanation of how such evidence would change the ALJ's decision.

## B. Weight Given by the ALJ to the Opinion of Dr. Darryl Prime

To be found disabled, Plaintiff had to demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with Brasher, as the Plaintiff. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

18

Because Plaintiff bore the burden of proving she had a severe impairment, she thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities …."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ concluded that Plaintiff had several severe impairments: "coronary artery disease status post myocardial infarction with coronary artery bypass graft x 3, thyrotoxicosis (hyperthyroidism) with Graves' disease status post thyroidectomy, major depressive disorder, and anxiety disorder." (Tr. at 74.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 75.) The ALJ furthered determined that Plaintiff did not allege substantial limitations due to hypertension

19

and hyperlipidemia. (*Id.*) Based on the determinations that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the qualifying impairments, the Plaintiff's RFC, and the finding that there were jobs in significant numbers in the national economy that the Plaintiff could perform, the ALJ determined that the Plaintiff has not been under a disability since her alleged onset date of November 16, 2017. (Tr. 75-80.)

Plaintiff asserts that the ALJ failed to give the proper weight to the opinion of Dr. Darryl Prime, as Plaintiff's treating cardiologist, and further erred in failing to provide good cause for doing so.

As discussed above, new regulations came into effect in 2017, which govern this case. In addition to changes in how the Appeals Council reviews a case, these new regulations also provide revised instructions to the ALJ for evaluating medical opinions. For claims filed after March 27, 2017, 20 C.F.R. §§ 404.1520c and 416.920c declare that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." Instead, the ALJ will consider supportability, consistency, relationship with the claimant, length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship specialization, and other factors in evaluating

medical opinions and prior administrative medical findings, with the most important factors being supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c. While the ALJ must explain the role of the supportability and consistency factors in evaluating the opinion of a medical source or administrative medical finding, he is not required to do the same for the other factors. *Id.* In responding to comments to these changes when proposed, the Social Security Administration explained,

> The supportability and consistency factors provide a more balanced and objective framework for considering medical opinions than focusing upon the factors of consistency and the medical source's relationship with the individual. A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, will not be persuasive regardless of who made the medical opinion.

*Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01 (Jan. 18, 2017).

In contrast, 20 C.F.R. §§404.1527 and 416.927, the regulations that govern for claims filed before March 27, 2017, prioritize the treatment relationship, giving more weight to a treating source's medical opinion. Indeed, if the ALJ "find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [Plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. §§404.1527, 416.927.

21

In Plaintiff's reply, she argues that the old rules apply to this case because the new rules do not supersede Eleventh Circuit precedent. (Doc. 12 at 9.) In support of this argument, Plaintiff cites *Rose v. Saul*, a case out of the Eastern District of North Carolina, in which the court held that the new rules did not supersede Fourth Circuit precedent. No. 7:19-CV-91-BO, 2020 WL 4740479, at *3 (E.D.N.C. Aug. 14, 2020). The *Rose* court explained its holding as follows:

> The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of *Bird* and the cases that preceded it. *Bird* did not interpret a prior regulation, alterable by SSA. Rather, Bird followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.

*Id.*

The Court notes first that *Rose* is distinguishable because it considered a case dealing with a disability determination by another government agency, rather than an opinion by a treating physician, that the ALJ did not discuss at all in her opinion. *Id.* at *2-*3. In that case, the Department of Veterans Affairs ("VA") gave the Plaintiff a one hundred percent disability rating, and "the ALJ … did not mention—much less discuss—[Plaintiff's] 100% VA disability rating." *Id.* at *3. The ALJ's opinion in Plaintiff's case does not make the same error. The ALJ explained that he considered Dr. Prime's opinion to be unpersuasive "because it is not consistent with the available medical evidence and the excessive limitations assessed by Dr. Prime

are not consistent with physical examination findings of the claimant that have remained normal throughout the longitudinal record after her coronary artery bypass grafts." (Tr. at 79.)

Moreover, while Fourth Circuit precedent may establish the treating physician rule independent of the regulations, courts in the Eleventh Circuit have not reached the same conclusion. In one of the few Eleventh Circuit cases that mention this issue, the court stated, "For claims filed on or after March 27, 2017, … no significant weight is given to statements made by treating physicians as opposed to non-treating medical sources." *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021). The court went on to explain that even under the regulations that apply to claims filed before March 27, 2017, the ALJ could still reject the treating physician's opinion in certain circumstances when it was not supported by the evidence. *Id.* at 497.

As noted above, Dr. Prime's assessment of Plaintiff's physical capacities on February 28, 2019, concluded that she would be lying down, sleeping, or propping her feet up for seven hours out of an eight-hour day, that she would miss twenty days out of at thirty-day period, that she would be off task seventy percent of the workday, and that her limitations did not exist back to November 16, 2017. (Tr. at 754.) This assessment is inconsistent with and unsupported by Dr. Prime's own records on

Plaintiff's condition after her bypass surgery, as well as the records from visits with Dr. Akinsanya. (Tr. at 403-10, 733-50.) The ALJ specifically noted that treatment records, including those by Dr. Prime after Plaintiff's bypass surgery, "indicate that the claimant's physical examinations have been normal, with normal musculoskeletal and neurological findings, including normal sensation, normal motor function, normal muscle strength, normal balance, normal gait and stance, normal deep tendon reflexes, and no focal neurological deficits." (Tr. at 78, 403-10.) Dr. Prime's visit notes from Plaintiff's evaluations in January 2018 and May 2018 also revealed normal respiration rhythm and depth, normal respiratory movements, and normal heart rate and rhythm, as well as normal back and abdomen findings. (Tr. at 403-10.)

Based on this evidence, the ALJ could properly find that Dr. Prime's assessment of Plaintiff's limitations are inconsistent with the medical record and unsupported by medical evidence. As a result, the ALJ did not err in the weight given to Dr. Prime's opinion.

## IV.   Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 20, 2021.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

206728